# Smith's Appeal.

A., for a valuable consideration covenanted with B. not to engage in the manufacture of ochre " in the county of Lehigh or elsewhere." He afterward did engage in said business in said county. B. filed his bill in equity praying that A. might be enjoined from carrying on said busi-

113　　579
f210　　293
210　　308

ness in said county.  *Held* (*a*) That the contract was reasonable; (*b*) that it was divisible as to place; (*c*) and that an injunction was the proper remedy to enforce it.

February 18th, 1886.   Before GORDON, PAXSON, TRUN-KEY, STERRETT, GREEN and CLARK, JJ.   MERCUR, C. J., absent.

APPEAL from the Court of Common Pleas of *Lehigh county*, in equity :   Of January Term 1886, No. 282.

This was an appeal by Marshall L. Smith from a decree of said Court perpetually enjoining him from engaging in the manufacture of ochre within the county of Lehigh, Pennsylvania.   On January 30th, 1885, William Jenks Fell filed the following bill :

1. That on the 23d day of May, Anno Domini one thousand eight hundred and eighty-three, Marshall L. Smith, together with Charles W. Smith and William N. Reazor, entered into a written covenant and contract with this complainant, of which contract the following is a true and correct copy, to wit :

" This agreement made this twenty-third day of May, Anno Domini 1883, between William Jenks Fell of the first part, and Marshall L. Smith, Charles W. Smith and William N. Reazor, of the second part, witnesseth : Whereas, the Smith Metallic Paint and Ochre Company is indebted to the party of the first part in a large sum of money, for which he has obtained judgment against said company, and has issued execution thereon, and has levied upon the machinery, tools, merchandise, &c., of said company, in a certain mill building belonging to one Blakeslee, and of which building the said M. L. Smith is tenant by virtue of an oral lease from said Blakeslee.

And whereas, certain of the articles levied upon under and by virtue of said execution are claimed by the said M. L. Smith as his property, to wit : Two chests of tools, a crosscut saw, six light picks, six heavy picks, one buckboard wagon, one set of harness, one express wagon and one rod staff.

And whereas the parties of the second part, or said Smith (C. W.) and Reazor, are indebted to certain of their employés heretofore employed in and about said mill building in manufacturing ochre, &c., in the sum of eighty-seven dollars and fifty cents.   And whereas, the said M. L. Smith has requested said Fell to allow him to remove said above enumerated tools, wagon, &c., from said mill, and the said parties of the second part have requested said Fell to pay said employés the said sum of money due them as aforesaid.   Now this agreement witnesseth, that the said Fell hereby agrees and binds himself to accede to the said requests of the said parties of the second

part, and in consideration thereof, the said parties of the second part hereby agree with said Fell, severally and jointly, that they will forthwith cease the manufacture of ochre, and that they will not at any time hereafter, in the county of Lehigh, or elsewhere, either as principals or principal, or by or as agents or agent, factors or factor, employers or employé, or in any other capacity, or way, or manner, either directly or indirectly, engage in the business of manufacturing ochre, or become in any way or manner, in any capacity whatsoever, connected with or interested in any corporation or partnership engaged in such manufacturing. And it is further understood and agreed, that this contract being complied with in good faith by the parties of the second part, that the said Fell will make no claim upon them for any royalty which may be due under and by virtue of a certain contract made and entered into between Charles W. Smith and William N. Reazor, trading as Smith and Reazor, of the one part, and the Smith Metallic Paint and Ochre Company of the second part, dated the fifteenth day of July, 1882.

In witness whereof, the said parties have hereunto set and affixed their hands and seals the day and year first above written.

WM. JENKS FELL.　　[SEAL]
MARSHALL L. SMITH.　[SEAL]
CHARLES W. SMITH.　[SEAL]
WILLIAM N. REAZOR.　[SEAL] "

Sealed and delivered in the  
　　presence of us,  
　　　EDWARD BARRY.

2. That notwithstanding said covenant, and in direct violation of the same, the said Marshall L. Smith, by himself, his associates and employés, has engaged in the business of manufacturing and selling ochre in Washington township, Lehigh county, Pennsylvania, about a half mile north of the borough of Slatington, that the said Marshall L. Smith, though notified to desist, has continued and persisted in carrying on the business aforesaid, and is still doing so. That this complainant has faithfully complied with all the covenants on his part.

3. That the conduct of the said Smith, in working daily and constantly, is an injury to the complainant, and if persisted in and not enjoined, will work irreparable injury to the complainant, which cannot be measured or compensated by any standard of damages.

Your orator, therefore, prays your honor to perpetually enjoin and restrain the said defendant, by himself, or by his agent, superintendent, factor or employé, or by any other

person, from engaging in or continuing the manufacture or sale of ochre in the county of Lehigh aforesaid.

Your orator further prays your honor to grant a preliminary injunction, restraining and enjoining the said defendant, as aforesaid, until further order of this Court.

To this bill Marshall L. Smith, the defendant, filed the following answer:

1. True it is that this respondent entered into the written contract set forth in the first paragraph of plaintiff's bill.

2. That the tools, wagons, harness, etc., specifically enumerated in the first paragraph of plaintiff's bill, were the separate individual property of this respondent; that they were levied on by the sheriff of Lehigh county under a writ of *test. fi. fa.*, issued upon a certain judgment, wherein W. Jenks Fell was plaintiff, and "The Smith Metallic Paint and Ochre Company," a company created under the laws of the state of New Jersey, was the defendant; that the plaintiff, W. Jenks Fell, knew that these articles of personal property belonged to this respondent; and your respondent saith, that the release of the said articles from the levy, or the pretended levy, by the sheriff was not a legal or sufficient consideration for the making of the contract aforesaid.

3. That the judgment aforesaid was No. 169, March Term, 1883, of the Court of Common Pleas of Philadelphia county, No. 3; that it was confessed by the president of the said Smith Metallic Paint and Ochre Company, without the authority of the board of directors, and without the knowledge of the board of directors; and this respondent alleges that the said plaintiff was to furnish money for the purposes of the corporation, and take therefor a part of the corporate stock; and that in violation of said contract and without authority of law he, the said plaintiff (who was secretary and treasurer of the corporation), and Charles M. Morris, the president, agreed to confess the judgment aforesaid so that the corporate property might be sold and purchased by the said plaintiff.

4. That the contract aforesaid, so far as this respondent is concerned, is null and void, and was made without consideration, and the terms of it, as the same relate to the manufacture of ochre, are in contravention of public policy and the laws of this state.

5. That it was understood and agreed at the time of the making of the contract aforesaid, that the said plaintiff was to run the factory (the machinery of which was under levy and about to be sold as the property of the Smith Metallic Paint and Ochre Company), and to employ in the running of the same this respondent, and Charles W. Smith and W. N.

Reazor; that after the sheriff's sale, the said Fell did, for a time, run the factory, and this respondent was employed and paid by him; and this respondent continued in said employment until the said plaintiff discontinued the running of the mill and abandoned the making of ochre in the county of Lehigh and elsewhere.

6. That by reason of the discontinuance of the business, as well as the abandonment of the same by the plaintiff as aforesaid, this respondent was released and discharged from any and every responsibility under the contract, if the same in law or equity was at any time binding and obligatory upon him.

7. This respondent denies the said facts and allegations set forth in plaintiff's bill, as the same are therein stated, and requires the proof be made according to law.

8. That since the abandonment of the manufacture of ochre by the said plaintiff, this respondent has been employed by one George W. Blabon, of the city of Philadelphia, to superintend the manufacture of slate, paints and ochres; and this respondent further says that in the matter of his employment he has violated no covenant or agreement.

9. That the facts set forth in the third paragraph of the bill are denied; that the plaintiff acquired no rights under or by virtue of any contract or covenant with this respondent in reference to the manufacture or sale of ochre; and that said plaintiff is in no way injured in his property or business because of the employment of this respondent, as set forth in the eighth paragraph of this answer.

10. That under the facts as set forth in the bill the plaintiff is not entitled to relief prayed for.

Issue was joined and C. J. Erdman, Esq., was appointed Examiner and Master, who took the testimony and reported that the prayer of the petitioner should be granted.

To this exceptions were filed by the defendant, which were dismissed by the Court, and the decree recommended was made, ALBRIGHT, P. J., filing the following opinion:

In May, 1883, the plaintiff, the defendant, and one Morris were the stockholders and directors of a foreign corporation called the Smith Metallic Ochre and Paint Company. Said company owned the machinery and plant for the manufacture of ochre, near Slatington, and in Lehigh county, Pa.

C. W. Smith and W. N. Reazor, as partners, carried on the business of manufacturing paint. They were indebted to their employés in the sum of $87.50, and owed the plaintiff a considerable amount of royalty. Plaintiff had obtained judgment against said corporation, issued execution and levied on the personal property alleged to belong to the corporation; a

portion of the goods seized were claimed by M. L. Smith, the defendant, to be his property. On May 23d, 1883, being the day before the sheriff's sale, the plaintiff, the defendant, C. W. Smith and W. N. Reazor met, settled certain disputes existing between them, and entered into a writtten agreement. (The writing recites that M. L. Smith was the tenant, under Blakeslee. of the mill in which the property levied on was located.) By the said contract the plaintiff agreed, with the other parties thereto, in consideration of the joint and several covenants of said other parties, that they would not thereafter, in the county of Lehigh, or elsewhere, as principals, agents, employers or employès, or in any other capacity, engage in the manufacture of ochre; that he, the plaintiff, would make no claim for royalty due, and would accede to the requests of the other parties to release said goods claimed by defendant and pay said labor claims. Said property claimed by defendant was released from the levy at the sheriff's sale. Plaintiff bought the property and paid the labor claims. Afterward the defendant, as superintendent of the works of one Blabon, near Slatington, and within Lehigh county, engaged in the business of manufacturing ochre. This bill was brought to restrain the defendant from engaging in said business in the county of Lehigh. The Master found that the plaintiff is entitled to an injunction, restraining the defendant from carrying on or being engaged in said business, within the county of Lehigh, which is the relief prayed for in the bill.

An agreement not to carry on a certain business anywhere is invalid, whether it be by parol or specialty, or whether it be for a limited or an unlimited time: Mitchell *v*. Reynolds, 1 P. Wms., 190, and notes thereto in 1 Sm. Lead. Cas., 705. The rule of law just stated, recognized in Mitchell *v*. Reynolds (it is much older than said case), has been in substance observed almost everywhere, certainly in Pennsylvania. (See Parsons on Cont., 751; 2 Whar. on Cont., § 430; Story on Cont., 550–554.) Keeler *v*. Taylor, 3 P. F. S., 467; Gompers *v*. Rochester, 6 Id., 194; Harkinson's Appeal, 28 Id., 196.

Such a contract tends to prevent persons from obtaining a livelihood, is a restriction upon trade, and, therefore, in contravention of sound public policy.

On the other hand contracts restraining the exercise of a trade, etc, in particular localities, where there is reasonable ground for the restriction, are valid, and the Courts will not inquire into the adequacy of the consideration: McClurg's Appeal, 8 P. F. S., 51; Carroll *v*. Hicks, 10 Phila., 308 (affirmed by the Sup. Ct., Br. Dig., 3051); Bett's Appeal, W. N. C., 431.

If defendant's covenant not to engage in the business speci-

fied, "in the county of Lehigh or elsewhere," is divisible, it may be enforced, so far as the question of space is concerned; if it is not divisible it cannot be enforced.

An agreement to abstain from a certain business in a town, or anywhere within a boundary of ten miles, is valid: Gompers *v.* Rochester, *supra ;* or within a county, Lange *v.* Werk, 2 Ohio St., 517; Dean *v.* Emerson, 102 Mass., 480.

In Oregon Steam Navigation Co. *v.* Winsor, 20 Wall., 70, Justice BRADLEY, in the course of the opinion, says: "The question arises whether the contract is so divisible, in relation to the California portion, that it can stand for the seven years for which the Oregon Company is bound, though it be void as to the remaining three years. We think it is so divisible. It is laid down by Chitty, as the result of the cases, 'that agreements in restraint of trade, whether under seal or not, are divisible, and, accordingly, it has been held that when such an agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is void, as being in restraint of trade, whilst the other is not, the Court will give effect to the latter and will not hold the agreement to be void altogether.' The cases cited in support of the proposition are Chesman *v.* Nainby, 2 Strange, 739; Wood *v.* Benson, 2 Crompton & Jervis, 94; Mallan *v.* May, 11 Meeson & Welsby, 653; Price *v.* Green, 16 Id., 346; Nichols *v.* Stretton, 10 Queen's Bench, 346. In Price *v.* Green, the contract was not to exercise the trade of a performer in London, or within six hundred miles thereof; and it was held divisible and good for London only. This case was carried through all the courts. . . . . . We see no reason why this principle should not be followed in the present case."

In said case of Dean *v.* Emerson, the defendant had covenanted not to carry on a certain business within the limits of Worcester county, and for the same consideration further covenanted not to carry on the same business within the limits of the United States. The Court held that the two covenants were clearly distinct and divisible, and sustained a report of a Master assessing damages for a violation of the covenant as to Worcester county ; the Court said that it was not required to consider the validity of the second covenant.

This principle, it is believed, conflicts with no decision of the Supreme Court of this state. It is more reasonable than the opposite proposition—that is, that said stipulation as to space is not divisible, and consequently void. One gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated, in which

case the whole promise is void: Pars. on Cont., vol. 1, § 12; Ch. 1, 380.

I therefore hold, with the learned Master, that the contract is divisible and enforceable so far as it relates of Lehigh county. There was a valuable consideration for the contract; the evidence warrants the Master's finding in this respect. That the Court will not inquire whether the consideration is equal to that which the party gives up or loses by the restraint under which he placed himself, is decided in McClurg's Appeal, *supra*.

The plant for the manufacture of ochre, to which the contract in suit relates, was when the contract was made and still is in Lehigh county; the plaintiff is still interested in said works and the ochre business; although he does not now carry on the manufacturing, he expects to do so again when it can be done profitably. The restriction (as to the county where plaintiff's works are located) does no more than afford a fair protection to the plaintiff; it does not unfavorably affect the public, nor does it oppress the defendant. For it seems to be conceded that said contract, as to places outside of Lehigh county, is void; if it is not conceded, I think the cases cited leave no doubt that a Court will so hold if the question ever arises. The contract, therefore, is not unreasonable. An action at law would not afford the plaintiff an adequate remedy: McClurg's Appeal, *supra*. The facts found by the Master are sustained by the evidence and entitle the plaintiff to the injunction prayed for.

Now, December 21st, 1885, the exceptions are dismissed; the decree recommended by the Master will be made.

The decree was formally entered, from which the defendant took this appeal, assigning said decree for error.

*Edward Harvey*, (*R. D. Roper* with him) for appellant.— 1. Contracts for the general restraint of a trade or industry are illegal and void: 2 Chitty on Contracts, 982; Homer *v.* Ashford, 3 Bing., 328; 1 Wharton on Contracts, § 431; 1 Addison on Contracts, § 270; 2 Parsons on Contracts, 747.

2. To this general rule there are some exceptions. Particular restraints are sometimes held to be good. If the restraint is partial, as to time or place, and there be a good consideration given to the party restrained, a contract may be enforced: Masters *v.* Fell, Willes, 388. If the restraint is unlimited in point of space it is void: Ward *v.* Byrne, 5 M. & W., 548. The restraint must be partial: Davis *v.* Mason, 5 T. R., 118; Bunn *v.* Guy, 4 East, 190; Whittaker *v.* Hour, 3 Beav., 383; Proctor *v.* Sargeant, 2 M. & G., 31; Leighton *v.* Wales, 3 M. & W., 545.

"In all restraints of trade, when nothing more appears, the law presumes them bad; but if the circumstances are set forth, that presumption is excluded, and the Court is to judge of these circumstances and determine accordingly; and if upon them it appears to be a just and honest contract, it ought to be maintained," per PARKER, C. J., in Mitchell v. Reynolds, 1 P. Williams, 197; Wallis v. Day, 2 M. & W., 281; Mallan v. May, 11 M. & W., 665; Ross v. Sadgbur, 21 Wend, 158; Gompers v. Rochester, 56 Pa. St., 194; Metcalf on Contracts, 233.

The reasonableness or unreasonableness of such contracts is a matter of law for the Court: Mallan v. May, 11 M. & W., 668; Davis v. Mason, 5 T. R., 118; Horner v. Graves, 7 Bing., 735; Chesman v. Nainby, 2 Stra., 739.

There was no consideration for the contract. It was not reasonable; there was no necessity for it to protect the plaintiff in the enjoyment of his trade or business.

3. Partial restraints, while they may be good in law, will not always be enforced in equity. "Equity is loth" says WOODWARD, C. J. in Keeler v. Taylor, 53 Pa. St., 469, "to enforce them, and will not do so if the terms be at all hard or even complex." The Court will not give any assistance to a party seeking to enforce a hard bargain: Kimberley v. Jennings, 9 Eng. Ch., 340. In equity a decree is not of right, but of grace, and a chancellor will refuse to enjoin if in conscience it appear he would do greater injury by enjoining than by leaving the party to his redress by a Court and jury: Reichard's Ap., 57 Pa. St., 105. Applying these familiar rules to this case, it is difficult to see how the decree could have been made. Fell needed no protection. He was engaged in no business that suffered by the engagement of Smith with Blabon. Without appreciable damage to Fell, the appellant is deprived of the right and ability to earn his living, simply because of a hard bargain. A chancellor must have a sensitive conscience that could be moved into action by the appeal of Fell. The Courts of law are open to Fell if the contract is legal. There, he can be compensated, through adequate forms of procedure, for any damage he may have sustained. Here, it was incumbent on Fell to show that he had suffered irreparable damage and could not be compensated by an action at law: Harkinson's Ap., 78 Pa. St., 196; Gray v. Railroad Co., 1 Grant's C., 412; Clark's Ap., 62 Pa. St., 447; Dunlap v. Gregory, 10 N. Y., 241.

*R. E. Wright & Son,* for Appellee.—1. While contracts in general restraint are void, yet where they are based upon a valuable consideration, and are not unreasonable as a pro-

tection to the covenantee, and where they are restricted as to time, place, or subject, they are valid and will be enforced in equity.

The leading English case upon the subject is Mitchell *v.* Reynolds, reported in 1 Smith's Leading Cases, (Hare & Wallace notes,) page 641, (Sixth American Edition) : McClurg's Appeal, 8 P. F. S., 51 ; Gompers *v.* Rochester, 6 P. F. S., 194.

2. As to the objection that in this contract there is no limit as to time (short of the defendant's life) for which the covenant is to run, we submit that this does not impair the validity of the contract.

In the note to Mitchell *v.* Reynolds (1 Smith's Leading Cases, page 660,) it is said that " if the restriction as to place be not unreasonable, the circumstance that it is indefinite as to time does not invalidate the contract," citing Bowser *v.* Bliss, 7 Blackford, 24 ; Beard *v.* Dennis, 6 Porter's Indiana, 204 ; Hitchcock *v.* Coker, 33 E. C. L. R., 106 ; Archer *v.* Marsh, 33 Id., 254 ; Carrol *v.* Hickes, 10 Phila., 308 ; Betts' Appeal, 10 W. N. C., 431.

3. There is a valid consideration for the contract. In Wharton on Contracts, § 434, it is said that "such an agreement must have a valuable consideration ; though the Courts, if the consideration be the sale of a business, or instruction in a business, will not undertake to determine whether the consideration be adequate." Citing : Hitchcock *v.* Coker, 6 A. & E., 438 ; Pilkington *v.* Scott, 15 M. & W., 660 ; Tallis *v.* Tallis, 1 E. & B., 397 ; Pierce *v.* Fuller, 8 Mass., 223 ; Lawrence *v.* Kidder, 10 Barb., 649 ; McClurg's Appeal, 58 Pa. St., 51 ; Palmer *v.* Graham, 1 Parsons, 476 ; Grasselli *v.* Sowden, 11 Ohio St., 349 ; Jenkins *v.* Temple, 39 Ga., 655.

4. Conceding, for the sake of argument, that as an unlimited restraint as to space is void to that extent, we submit that the covenants are divisible, and that as to Lehigh county it is certainly good.

This question was never directly raised in Pennsylvania so far as we have been able to learn, but there is adequate authority upon the subject, and it is all in the same direction.

The leading English case is Green & Price, 13 Meeson and Welsby, 695, and on appeal reported as Price *v.* Green, 16 Meeson and Welsby, 346 ; Oregon Steam Nav. Co. *v.* Winsor, 20 Wall., 65.

5. The contract is reasonable. See the following cases, as instances of contracts considered reasonable by the Courts : Smith's Leading Cases, 651 ; Mallan *v.* May, 11 M. & W., 653 ; Hayward *v.* Young, 2 Chit., 407 ; Green *v.* Price, 16 M. & W., 346 ; Tallis *v.* Tallis, 1 E. & B., 391 ; McClurg's Appeal, 8 P. F. S., 51 ; Gompers *v.* Rochester, 6 P. F. S., 194 ; Bigony *v.* Tyson, 25 P. F. S., 157.

6. An injunction is a proper remedy in a case of this kind. The contracts of this kind were enforced by injunction in the following cases, cited above: Morse Twist Co. *v.* Morse, 103 Mass., 73; Dean *v.* Emerson, 102 Mass., 480; Carroll *v.* Hicks, 10 Phila., 308.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

The plaintiff and defendant were two of the three stockholders of the corporation that owned the machinery and plant for the manufacture of ochre, located in Lehigh county. The firm of Smith & Reazor were carrying on the business under a lease, and were indebted in a small amount to their employés, and in a large amount for royalty. The plaintiff had issued execution on his judgment against said corporation, by virtue of which the sheriff had seized all its property, including property claimed by the defendant, and advertised the same for sale on May 24th, 1883.

On the day before the sheriff's sale the agreement was made. That all the parties to the agreement were in some way interested in the business and property is obvious. And it is also apparent that they contemplated that Fell would buy the machinery and plant at the sheriff's sale. Among other things they covenanted that Fell should release the levy on the goods claimed by the defendant, that he should pay the employés of Smith & Reazor the amount due them, and that he would make no claim for royalty under the contract between Smith & Reazor and said corporation, dated July 15th, 1882; and the other parties jointly and severally covenanted to forthwith cease the manufacture of ochre, and not at any time thereafter either as principals or principal, or by or as agents, or employés, or in any other way, engage in the manufacture of ochre in the county of Lehigh or elsewhere.

Fell purchased the property at the sale as had been contemplated. There is no difficulty about the sufficiency of the consideration for the defendant's covenant. It is more than the release of the property he claimed, if that is of doubtful sufficiency. C. W. Smith, one of the parties of the second part, is his son; he jointly and severally with his son and Reazor, covenanted with Fell, the other party, in consideration of Fell's covenants, to cease the business and not engage in it in the future. The joint and several covenant of the three was the inducement to Fell. The agreement and the sheriff's sale of the property of the corporation, put all the interested parties out of the business, except Fell, and put him in with a covenant by the three that they would not again engage in the business. In effect the plaintiff became the purchaser of

the property and relieved the others from payment of indebtedness. It was altogether reasonable to settle the dispute about the ownership of the property claimed by the defendant; there is nothing to show that either party to that dispute was acting in bad faith. That it was reasonable for Fell to agree to pay certain debts, and release the claim for royalty, cannot be gainsaid. This agreement seems to be fairly within cases of the first class, upheld as legal, as stated in the appellant's argument, namely, "sales of stock and good will, with covenant not to carry on the business on the same spot in opposition to the purchaser."

A contract restraining one of the parties from the exercise of a trade within a limited locality, when there is reasonable ground for the restriction, is valid. Inquiry will not be made into the adequacy of the consideration—its value will not be measured against the uncertain value of the right to carry on the trade or business—if it be reasonable, it is enough: McClurg's Appeal, 58 Pa. St., 51.

The covenant as to place, "in the county of Lehigh or elsewhere," is divisible, and valid as to the county; for the present it is conceded to be void elsewhere. This point was decided in a case where the party agreed not to engage in a particular business in Cincinnati or elsewhere: Thomas *v.* Miles, 3 Ohio St., 274. Other cases are cited by the learned judge of the common pleas, sustaining the same doctrine. None to the contrary was referred to at the argument. Where a county, or city, or borough, is named as a limit, and an unreasonable extent of territory in addition is also named, the covenant is divisible and may be valid as to the particular place, which is a reasonable limit.

It has been said that all the cases when they come to be examined seem to establish this principle, that all restraints upon trade are bad, as being in violation of public policy, unless they are natural, and not unreasonable, for the protection of the parties in dealing legally with some subject matter of contract. The principle is this: public policy requires that every man shall not be at liberty to deprive himself or the state of his labor, skill or talent, by any contract that he enters into. On the other hand, public policy requires that when a man has, by skill or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to so sell it, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such case the same public policy enables him to enter into any stipulation, however restrictive it is, provided the restriction, in the judgment of the Court, is not unreasonable, having

regard to the subject matter of the contract: Leather Cloth
Co. v. Lorsent, 9 Law R. Eq. C., 345.

We are of opinion that the Court of Common Pleas rightly
held that the covenant as to place was divisible, that it
was competent for the defendant to make the covenant, that
it is founded on good consideration, and is reasonable and not
oppressive.

> Decree affirmed, and appeal dismissed at the
> costs of appellant.