## 26196. SCOTT *v*. HALL *et al.*

468

Decided September 9, 1937. Rehearing denied September 30, 1937.

*Frank W. Bell, E. W. Jordan,* for plaintiff in error.

*Edward R. Hines, Marion Ennis, Sibley & Allen, Smith & Smith,* contra.

Guerry, J.   T. M. Hall brought this action against W. M. Scott and Richard Binion.   Hall alleged that he entered into a contract on June 29, 1929, with Richard Binion and W. M. Scott, which is in part as follows:   "That whereas the parties of the first part are now engaged as partners in the practice of medicine and surgery in Baldwin County, Georgia, and the party of the second part is also engaged in such practice and whereas it is desired by all the parties that they become associated in such practice, it is therefore agreed between the parties that T. M. Hall, will and does hereby become the senior associate of the parties of the first part in the practice of medicine and surgery under the name of 'The Milledgeville Clinic' upon the following terms:   T. M. Hall shall continue his practice of medicine and surgery as he has customarily practiced, being the judge of the fees charged and all matters affecting the conduct of his practice, giving such time and attention to the practice of his profession as he has given in the past, or such attention as the condition of his health and

strength will permit, with the privilege of taking such vacations as he usually takes or desires and such as his state of health shall require. As a courtesy to him and to safeguard his health, calls for professional services made upon him by patients, to which he is unable or considers it inadvisable to respond, will be responded to by the parties of the first part or someone associated with the clinic. The fees and compensation for professional services rendered by T. M. Hall shall be the property and funds of the Milledgeville Clinic, and all bills and charges for such professional service shall be in the name of the Milledgeville Clinic. T. M. Hall shall not have any interest in the property, notes, accounts, other assets or profits of the Milledgeville Clinic, except to the extent of securing the payment of the compensation to be paid him under this agreement; nor shall he be responsible for the debts or obligations of the clinic. The said T. M. Hall shall continue his professional practice under this agreement so long as his physical condition and his state of health will permit and whenever he feels his inability to continue the practice of his profession he may discontinue the same. Should his disability to practice prove temporary he may return to the practice when his disability is removed. In consideration of the performance by T. M. Hall of this agreement, the parties of the first part agree as follows: To pay said T. M. Hall, during the years of his active practice under this agreement, the sum of $7500 annually, payments to be made monthly, and will pay all of the expenses incident to his practice, including materials and appliances required by him in his practice, the use of an automobile, and the service of a nurse to be selected by him. On his retirement the parties of the first part will pay him for the first three months thereafter $625 per month, and during the succeeding nine months will pay $312 per month, and thereafter during the balance of his life will pay him $156.25 per month. If after the retirement of T. M. Hall from the practice of medicine or surgery under this agreement, should he engage in practice of medicine or surgery for gain, his right to receive the monthly sum of $156.25 shall cease and determine during the time he engages in such practice."

The petition alleged that in pursuance of this contract the plaintiff associated himself with the defendants, and held himself out to the public as a partner of the defendants, and con-

tinued his practice of medicine and surgery to the best of his ability, and sent out bills therefor, and defendants actually received for his labor the first year of said contract more than $13,500 above all expenses, which was $6000 more than he was paid by defendants; that the defendants received and enjoyed the benefit from being associated with plaintiff, and had and accepted the opportunity of taking over the business and practice of the plaintiff, which benefits have not and can not be returned to plaintiff (certain specific instances of benefits received being set out); that defendants, with the assistance of the plaintiff, took out a policy of disability insurance against the liabilities assumed under the contract made in June, 1929, which policy provided for payment to the defendants of $250 per month should the plaintiff be permanently and totally disabled. On September 4, 1930, the plaintiff and the defendants entered into a second contract as follows:

"That whereas the parties of the first part are now engaged as partners in the practice of medicine and surgery in Baldwin County, Georgia, under the name and style of 'The Milledgeville Clinic;' and whereas in June, 1929, T. M. Hall became an associate of the parties of the first part in the practice of medicine and surgery under a contract whereby the parties of the first part agreed to pay the party of the second part, during the years of his active practice, seventy-five hundred dollars ($7500) annually, and upon his retirement from the practice certain other sums; and whereas the said T. M. Hall desires to retire from the practice of medicine and surgery; and whereas all the parties hereto desire to enter into a new agreement as to future payments to be made to the party of the second part, it is therefore agreed between the parties as follows: The contract of association entered into between the parties of the first part and the party of the second part in June, 1929, is hereby abrogated and rescinded, and in lieu of the agreements therein contained the parties of the first part agree to pay to the party of the second part the sum of three hundred dollars ($300) per month on the first day of each month, beginning October 1, 1930, and continuing during the life of the party of the second part. The party of the second part agrees that he will not engage in the practice of medicine or surgery; and should he breach this condition of the contract by engaging in

such practice, his right to receive the compensation above agreed to be paid shall cease and determine during the time he engages in such practice. The consideration of this agreement is the retirement of the party of the second part from the practice of medicine and surgery, the abrogation of the contract of association between the parties of the first part and the party of the second part, entered into in June, 1929, and the services performed by the party of the second part under the contract of June, 1929. While this contract takes effect from this date, it is understood and agreed between the parties that the payments to be made hereunder are contingent upon the recognition by the Ætna Life Insurance Company of Hartford, Conn., of its liability to pay the disability benefit under the policy issued by that company on the life of T. M. Hall for twenty-five thousand dollars ($25,000), wherein the parties of the first part are beneficiaries. The disability benefit under that policy is two hundred and fifty dollars ($250) per month, and this two hundred and fifty dollars ($250) and an additional fifty dollars ($50) is to be paid to the party of the second part each month. Should the parties of the first part not receive from the Ætna Life Insurance Company the disability benefit, then the contract between the parties of June, 1929, shall become effective and of full force as is [if?] the same had not been abrogated or rescinded. Should the Ætna Life Insurance Company suspend or discontinue the payment of the disability benefit under the policy referred to, then the parties of the first part will pay during the period of suspension at the same rate that they would pay under the provision of the contract of June, 1929, above referred to. And when the said insurance company resumes the payment of disability benefit, the payments will be made under the terms of this agreement. If, when the insurance company resumes the payment of disability benefits, it pays a benefit covering all or any part of the period during which the benefit was suspended, the parties of the first part will pay the party of the second part, for the period covered by the disability payments, the difference between the amount paid during the suspension and three hundred dollars ($300). It is further understood and agreed that should either of the parties of the first part die in the lifetime of the party of the second part, the estate of such deceased party shall not be

liable for the fifty dollars ($50) per month which is to be paid under this agreement in addition to the disability benefits received from the insurance company. Should both of the parties of the first part die in the lifetime of the party of the second part, then the party of the second part shall be paid the sum of two hundred and fifty dollars ($250) per month for the balance of his life."

The petition further set forth that at the time of making this second contract the plaintiff was, and was known to the defendants to be, permanently and totally disabled to practice his profession, and said second contract was made in recognition of plaintiff's rights under the first contract; that the Ætna Life Insurance Company, which issued the insurance policy above referred to, recognized its liability for the disability benefits mentioned in said second contract and has paid or is paying the defendants therefor; that defendant Binion has been paying to plaintiff $150 per month, and that defendant Scott paid such sums until October, 1934, at which time he discontinued the payments. Judgment was prayed for the alleged unpaid balances due under such contract. Scott filed a general demurrer to the petition, alleging that it set out no cause of action, in that the contract sued on is unilateral, is without consideration, and is illegal because it is a contract in general restraint of trade, and is therefore null and void.

We think the court properly overruled the general demurrer. We will discuss only the demurrer with reference to the contract being in general restraint of trade, as the briefs of counsel are most insistent upon this issue. The Code declares: "A contract which is against the policy of the law can not be enforced; such are contracts tending to corrupt legislation or the judiciary, contracts in general restraint of trade," etc. § 20-504. "A contract to do an illegal or immoral thing is void. If the contract be severable, that which is legal will not be annulled by that which is illegal." § 20-501. It will be noted that under the contract made in June, 1929, the plaintiff on his retirement was to be paid $625 per month for three months and $312 per month for nine months and $156.25 per month so long as he lived. These amounts were to be paid absolutely and unequivocally. There was no condition, precedent or subsequent, for the payment of the $625 for three months and $312 for nine months. It was agreed in

the contract that if the plaintiff should, after his retirement from the partnership, again practice his profession, his right to receive the $156.25 during such time would cease. We do not construe this to have been any consideration for the contract, but it was an event which would nullify the contract for a time. This first contract was a valid, subsisting, and binding contract at the time of the making of the second contract in September, 1930. This first contract was abrogated and rescinded only upon the condition that the Ætna Life Insurance Company should pay to defendants the sum of $250 per month under the terms of the policy issued by it on the life and continued good health of the plaintiff. If this were not done, the contract of June, 1929, should again become effective and of full force as if the same had not been abrogated or rescinded; and in the event of suspension of payments by the Ætna Life Insurance Company payments were to be continued to the plaintiff under the terms of the 1929 contract. It is alleged that the second contract was entered into because of the defendants' recognition of the fact that the plaintiff was permanently and totally disabled from practicing his profession, and that the insurance company had recognized their liability thereunder and had paid and were paying defendants thereunder. Under the second contract the plaintiff did agree not to engage in the practice of medicine, and further agreed that if he did so engage his right to receive compensation thereunder should cease "during the time he engages in such practice." The retirement of the plaintiff under the conditions outlined is made a part of the consideration of the contract, as well as the abrogation of the contract made in June, 1929, and the services already performed under such contract by the plaintiff. The consideration was ample to support the contract.

On the question of general restraint of trade our courts have recognized the conflict of authorities, and have said: "We can not, within reasonable limits, undertake to reconcile conflicting opinions in treating of contracts in restraint of trade, nor cite the authorities which bear upon the different constituent elements which render such contracts valid, or the want of which make them void, for the reason that the first are irreconcilable and the latter inharmonious." *Rakestraw* v. *Lanier,* 104 *Ga.* 188, 192 (30 S. E. 735, 69 Am. St. R. 154). In *Hood* v. *Legg,* 160 *Ga.* 620, 629

(128 S. E. 891), it was said: "The utter impossibility of harmonizing the conflicting opinions has already been recognized by this court." This general principle was laid down in the *Rakestraw* case, supra: "A contract in restraint of trade, upon consideration which shows it was reasonable for the parties to enter into it, is good; 'that whenever a consideration appears to make it a proper and useful contract and such as can not be set aside without injury to a fair contractor, it ought to be maintained.'" Mr. Justice Gilbert in the *Hood* case, supra, clearly pointed out the reasons why courts, under modern social and economic conditions, have had a tendency to liberalize the exceptions to the general rule in reference to trade restraints. See also 6 R. C. L. § 190. While, under our Code contracts in general restraint of trade are unenforceable, "if, considered with reference to the situation, business, and objects of the parties, and in the light of the surrounding circumstances, with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as to them and not specially injurious to the public, the restraint will be held valid." 6 R. C. L. § 194. In viewing the contract as presented in this record, it appears that the plaintiff contracted with the defendants to become the "senior associate" with them, giving to such practice such time as his health and strength would permit. This contract took into consideration his health and strength and the fact that he would probably have to retire from the practice; and upon such retirement, because of the benefits to be obtained from such partnership as long as it lasted, the defendants were to compensate the plaintiff as long as he lived, subject to a cessation of such compensation by the month during the time the plaintiff engaged in the practice of medicine. The petition alleged, and the second contract shows, that the event contemplated in the first contract had come to pass, to wit, the necessity, on account of his physical condition, for the plaintiff to retire from the practice of his profession. The defendants guarded against such happening by procuring, with the plaintiff's assistance, a disability policy payable to the defendants as beneficiaries, and the second contract was not to be of force and effect except and unless the defendants should collect on such policy by reason of

the total and permanent disability of the plaintiff. Except for the happening of such an event, the first contract remained of force.

As we have pointed out, the first contract was not such a contract as was violative of the Code section with reference to contracts in general restraint of trade. Nor do we think the second contract, when construed in its entirety, violates this inhibition. The amount to be paid under the contract, $300 per month, was not to be paid except and unless defendants collected from the Ætna Life Insurance Company under the policy issued on the plaintiff, and this amount could not be collected except and unless the plaintiff was totally and permanently disabled. If the plaintiff again recovered the ability to practice his profession, and by reason of that fact the insurance company should "suspend or discontinue the payment of the disability benefits" under the terms of the policy, the provisions of the contract of June, 1929, again became of force and effect. When the contract speaks of the consideration of this agreement as the retirement of the party of the second part from the practice of medicine and surgery, such an expression is to be construed in the light of the contract as a whole, and not as separate and apart from the entire provisions as embodied therein. In the next sentence another consideration is also named, and that is that the June, 1929, contract is abrogated and rescinded, and a third consideration is the services already performed by Dr. Hall. Dr. Hall, under the second contract, gave up his right to collect $625 for three months and $312 for nine months under the provisions of the first contract. He had contributed in earnings because of the first contract, under the allegations of the petition, $6000 more than he had received. He as senior associate had turned over to the Milledgeville Clinic, as nearly as he could, the clientele drawn to him through a lifetime of practice. Even though it be conceded that the clause of the second contract should be taken to mean that it was in general restraint of trade, this court has said that such a contract may be construed as a separable contract. " 'The rule is that where an agreement consists of a single promise, based on a single consideration, if either is illegal, the whole contract is void. But where the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing

several things, and some only of the promises are illegal, the promises which are not illegal will be held to be valid.' Rawleigh Medical Co. v. Walker, 16 Ala. App. 232 (77 So. 70, 72); 13 C. J. 512, 513. See also Civil Code (1910), §§ 4247, 4251; *Mechanics Realty & Improvement Co.* v. *Leva,* 16 *Ga. App.* 7 (2) (84 S. E. 222). Thus, where the consideration and promises are divisible in containing a lawful agreement to purchase and sell goods, coupled with a separable promise in unlawful restraint of trade, any unenforceability of the latter will not affect the validity of the former agreement. *Hood* v. *Legg,* 160 *Ga.* 620 (4) (128 S. E. 891); Smith's App. 113 Pa. 579 (6 Atl. 251); 13 C. J. 513, note 37, and cit." *Roberts* v. *H. C. Whitmer Co.,* 46 *Ga. App.* 839 (169 S. E. 385). The judge properly ruled that the contract was, even if in general restraint of trade, a divisible contract. "In determining whether a contract is entire or severable, the criterion is to be found in the question whether the whole quantity, service or thing—all as a whole—is of the essence of the contract. If it appear that the contract was to take the whole or none, then the contract would be entire." *Broxton* v. *Nelson,* 103 *Ga.* 327, 330 (30 S. E. 38, 68 Am. St. R. 97). The defendants in the present case accepted the abrogation of their obligation to pay the amounts payable under the first contract during the first year after the retirement of the plaintiff, irrespective of his again engaging in the practice. They accepted the services of the defendant and benefits obtained from the original contract. They may not, after accepting benefits because of the abrogation of the first contract, hold to such benefits and deny that the contract is valid and binding.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*