## Ashodian v. Garabedian

*James N. Robertson,* for plaintiff.
*John G. McDougall,* for defendant.

SAND, J., March 9, 1970.—This is an action in equity wherein plaintiff, Ashodian, seeks to enjoin defendant, Garabedian, from servicing any customer of plaintiff's, who was such during the time defendant was employed as plaintiff's dry cleaning plant manager, and specifically to enjoin defendant from servicing one Zeke Golubitsky. At issue is the interpretation of a covenant not to compete contained in a written "Employment Agreement" between the parties, dated March 1, 1966.

March 1, 1966, the parties entered into an employment agreement whereby defendant was employed as a plant manager of plaintiff's wholesale dry cleaning and dyeing plant in Fernwood, Delaware County, Pa. The contract specifically noted that it was "on a

weekly basis and may be terminated by either party giving written notice to the other at the end of any week." The agreement provides, where pertinent to this case, that defendant, "during his continued employment and for a period of ten years thereafter . . . will not disclose to any person, firm or corporation any information concerning (plaintiff's) business, nor its methods of operation, nor the requirements of any customers, nor will he, during such period of time, either directly or indirectly, in any capacity whatsoever, serve, pick up or deliver to any of the (plaintiff's) customers."

The contract also provided that a breach of the covenant would cause irreparable damage and that plaintiff could seek to enjoin defendant's violation.

During the period of defendant's employment under this agreement, one Zeke Golubitsky, a wholesale dry cleaning driver, was a customer of plaintiff.

On October 19, 1968, Zeke Golubitsky entered into an agreement of sale to purchase a dry cleaning plant and business in Germantown, Philadelphia, Pa., known as Dick's Dry Cleaning and Dyers. Settlement was made November 14, 1968.

During the week of November 4, 1968, defendant took a vacation from his employment with plaintiff for the purpose of finding a small dry cleaning business where he could go into business for himself. Plaintiff wished him good luck and offered to help him finance a purchase.

During the middle of that week, Golubitsky called defendant and informed him he had bought a plant and asked him to visit it. At the end of the week, he offered defendant a partnership in the business. Defendant left plaintiff's employ and went to work at Dick's Dry Cleaners and Dyers, then owned by Golubitsky. A partnership agreement between defendant

and Golubitsky was entered into in the middle of December 1968.

For some time prior to purchasing his own plant, Golubitsky had expressed to plaintiff his dissatisfaction with his arrangement with plaintiff. Defendant did not cause, and was not involved in, Golubitsky's decision to purchase his own plant.

Golubitsky is the only customer plaintiff has lost to Dick's Cleaners and Dyers. Defendant did not cause this defection. The defection was the natural result of Golubitsky's purchase of his own business. Defendant came to that business after the fact of Golubitsky's purchase.

Plaintiff concedes he has not shown that defendant has disclosed any information concerning plaintiff's business, methods of operation or customer requirements, or that defendant has directly or indirectly picked up from, or delivered to, any of plaintiff's customers. He contends, however, that defendant is "serving" his former customer, Golubitsky, by being his partner in, and working at, Dick's Dry Cleaning and Dyers. This, plaintiff argues, is a breach of the covenant not to compete.

Plaintiff relies on the plain and general meaning of the word "serve," to wit: to render service so as to benefit; to promote, as serve one's country; to the interest of contributing to the well being of; to aid by kind or useful offices; to be of service; to employ oneself in the interest of another, and in obedience to his direction. We have no doubt but that in the general sense of the word, defendant is "serving" Golubitsky.

We are required, however, to interpret the whole contract to ascertain the intent of the parties, and to determine whether plaintiff is entitled to the relief requested.

The subject contract does not contemplate that

defendant is required to work for plaintiff. In fact, the employment relationship is terminable by either party at the end of any week. The covenant does not contemplate that defendant's services are of a special and unique character (which they are not) to which plaintiff has an exclusive right, but only that defendant should not injure plaintiff by disclosing special information or taking customers from plaintiff.

We cannot find that the parties intended that defendant was not to "serve," in the general, broad sense, any customer of plaintiff for 10 years following termination of the contract. This would prohibit conduct of defendant which is profitable to him, but entirely innocuous to plaintiff, such as serving a customer of plaintiff, who is also a customer of a supermarket in which defendant is a grocery clerk; or delivering milk to customers of plaintiff.

Even were we to find that the parties intended the contract to mean that which plaintiff contends, we would not enjoin defendant's work for Golubitsky. The court will not enjoin conduct prohibited by a negative covenant where the violation causes no harm to plaintiff: Restatement, Contracts, vol. II, §380(1)(a).

Public policy requires that though a man who has something which he wants to sell may do so in the most advantageous way in the market, and this may mean that he must agree to avoid competing with the purchaser, nevertheless, he is not at complete liberty to deprive himself or the State of his labor, skill or talent by contract. The balance of these opposing ends of public policy is that the court will permit the restriction on the covenanter's behavior if it is not unreasonable, having regard to the subject matter of the contract and the protection necessary to the covenantee: Smith's Appeal (1886) 113 Pa. 579; Barb-Lee Mobile Frame Co. v. Hoot, 416 Pa. 222. The court

will act so as to afford fair protection to the covenantee, while not oppressing the covenanter: Holland v. Brown, 304 Pa. 545, 550.

To allow plaintiff's request for relief would result in oppressing defendant without affording protection to plaintiff. Defendant has caused plaintiff no harm. No benefit would accrue to plaintiff by granting the requested injunction. The only result of such injunction would be to harm defendant.

Accordingly, we enter the following

## DECREE NISI

And now, to wit, March 9, 1970, it is ordered and decreed that the complaint in equity is dismissed, and plaintiff is directed to pay the costs.

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi; if no exceptions are filed thereto within 20 days after service of such notice, the prothonotary shall enter, upon praecipe, the said decree nisi as a final decree.