A96A1786. DOUGHERTY, McKINNON & LUBY, P.C. et al. v. GREENWALD et al.
(484 SE2d 722)

POPE, Presiding Judge.
Dougherty, McKinnon & Luby, P.C., formerly Dougherty, McKin-

---

non & Greenwald, P.C. (DM&L), is a professional corporation of certified public accountants in Columbus, Georgia. DM&L, and several other persons and entities not relevant here, brought suit against two of its former employee/shareholders, Richard Greenwald and Richard Denzik, after Greenwald and Denzik terminated their employment with DM&L, and together with Charles Davis, started their own competing accounting firm in Columbus, Georgia known as Greenwald, Denzik & Davis, P.C. (GD&D).[1] In its suit, DM&L in part sought to recover certain liquidated damages from Greenwald and Denzik under the terms of an employment Termination Agreement they had signed based on the fact Greenwald and Denzik had gone into competition with DM&L. In answering the suit, Greenwald and Denzik denied the enforceability of the liquidated damages portion of the agreement, and filed counterclaims against DM&L. In their counterclaims, Greenwald and Denzik both sought to recover under the terms of the Termination Agreement, among other things, the amount each had paid, plus interest, for their capital stock in DM&L. They also both sought the recovery of certain monies they each allegedly loaned to DM&L.

The trial court granted summary judgment to Greenwald and Denzik regarding DM&L's claim for liquidated damages. We affirmed the trial court on the grounds that the liquidated damages portion of the Termination Agreement amounted to an unenforceable covenant not to compete. See *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 213 Ga. App. 891 (447 SE2d 94) (1994). Thereafter, Greenwald and Denzik moved for summary judgment as to the abovementioned portions of their counterclaims. The trial court granted their motion, and in this appeal, DM&L contends the trial court erred in doing so.

1. DM&L contends the trial court erred in concluding that pursuant to an express provision of the Termination Agreement, Greenwald and Denzik are entitled to recover the sums they each paid for DM&L capital stock, plus interest. Specifically, DM&L argues that as a result of this Court's determination that the liquidated damages provision of the Termination Agreement was unenforceable, there has been a complete failure of consideration regarding the Termination Agreement and, therefore, none of its provisions, including the one entitling employee/shareholders the right to have their capital stock repurchased by DM&L upon termination of employment, are enforceable. We reject this contention.

In this state, "where an agreement consists of a single promise,

---

[1] Although GD&D and Davis also were named as parties in the lawsuit, they are not involved in this appeal.

based on a single consideration, if either is illegal, the whole contract is void. But where the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and [only some] of the promises are illegal, the promises which are not illegal will be held to be valid." (Citations and punctuation omitted.) *Scott v. Hall*, 56 Ga. App. 467, 475-476 (192 SE 920) (1937). In this case, the Termination Agreement contains multiple promises. And, as in *Scott*, the trial court in this case was correct in its determination that the illegal non-compete covenant in the Termination Agreement was not the sole consideration for the multiple promises in the agreement, including the promise to repay Greenwald and Denzik for their capital stock. DM&L's argument to the contrary ignores the fact that both Greenwald and Denzik each paid a substantial amount of money for their stock and the fact that each of them served DM&L and thus contributed to its value. Clearly their substantial payments for capital stock combined with their years of service to DM&L qualifies as consideration for the promise in the Termination Agreement to repurchase their stock. Consequently, in light of the rule set forth in *Scott*, the trial court did not err in treating the Termination Agreement as a severable contract, and as such, finding that the multiple promises contained in the agreement, including the stock repurchase provision, were still enforceable even though the non-compete provision was not. When a "contract contains mutual, binding, legal promises independent of [other promises that are] illegal, void provisions, the contract [is] severable, and the legal portions are not annulled by the illegal ones and can be enforced, disregarding the latter." *Martell v. Atlanta Biltmore Hotel Corp.*, 114 Ga. App. 646, 649 (152 SE2d 579) (1966).

Furthermore, we note that to hold that the entire contract in this case was void based on the illegality of the non-compete provision alone would in essence be the equivalent of finding the non-compete provision binding on Greenwald and Denzik because it would inflict a severe penalty upon them based solely on their permissible competition with DM&L. Such a holding clearly would be repugnant to the law previously established in this case. See *Dougherty, McKinnon*, 213 Ga. App. 891.

2. DM&L next argues that the trial court erred in determining that it must pay Greenwald and Denzik the purchase price, plus interest, they paid for their capital stock as required under the terms of the Termination Agreement because such a payment would constitute a distribution to a shareholder in violation of OCGA § 14-2-640 (c) (1) in that DM&L would be unable to pay its debts as they became due in the usual course of business after making such a disbursement. This argument is meritless. On its face, OCGA § 14-2-640 applies only to "distributions to shareholders." Greenwald and

Denzik are no longer shareholders of DM&L. Under the terms of the Termination Agreement, their relationship with DM&L, including their shareholder status, ended upon the termination of their employment. At that time, pursuant to the Termination Agreement, DM&L incurred the obligation to repurchase all of Greenwald's and Denzik's capital stock, and Greenwald and Denzik became creditors of DM&L rather than employee/shareholders.

The fact that Greenwald and Denzik are no longer DM&L's shareholders is further evident in light of the provisions of OCGA § 14-7-5, which set forth the parameters as to who can hold stock in a professional corporation. Under OCGA § 14-7-5 (a), only those individuals "licensed to practice the profession for which the corporation is organized and who [are] actively engaged in such practice as an active practicing member of the issuing corporation" may hold shares in the professional corporation. And while OCGA § 14-7-5 (c) expressly provides for a holding period during which shareholders disqualified under subsection (a) can continue to hold shares in a professional corporation, it expressly provides that "[u]pon the actual transfer or redemption [of shares] or termination of the required holding period, whichever first occurs, the . . . disqualified shareholder[] shall cease to be a holder of record *for all purposes*." (Emphasis supplied.) In this case, the holding period has long since passed.

3. Finally, DM&L argues that the trial court erred in granting summary judgment to Greenwald and Denzik regarding their claim that they were entitled to recovery of the money each loaned to DM&L. Specifically, DM&L claims that there is a genuine issue of material fact regarding Greenwald's and Denzik's entitlement to such money based on Len McKinnon's affidavit testimony that any such loans were converted to capital contributions with Greenwald's and Denzik's consent. Although Greenwald and Denzik dispute the claim that the loans were ever converted to capital contributions with their knowledge and consent, thus creating an issue of fact, it is clear that this conflict in the evidence does not create a genuine issue of *material* fact in the case. If McKinnon's affidavit testimony is taken as true, as it must be in this case, then Greenwald and Denzik would be entitled to recovery of the money under the Termination Agreement.

Pursuant to the express terms of the Termination Agreement, DM&L must repurchase "all shares of [its] capital stock owned by [employee/shareholders] for the Repurchase price." The "Repurchase Price" (i.e., the amount to be paid for a terminated employee/shareholder's share of DM&L's capital) is defined in the Termination Agreement as "the actual consideration paid to [the professional corporation] by such Shareholder/Employee for said shares of . . . capital stock." Under these contractual provisions, which were deter-

mined above to be enforceable, the money Greenwald and Denzik loaned to DM&L would qualify as consideration paid to the professional corporation for their respective shares of the corporation's capital, if the loans were in fact converted to capital as McKinnon claims. Under such circumstances, the loans themselves may no longer exist, but DM&L's liability for money converted to capital would still exist under the repurchase provision of the Termination Agreement. Thus, even when the facts regarding the loans are construed as DM&L claims they should be, the trial court was correct in awarding summary judgment to Greenwald and Denzik with regard to their recovery of the amount of the money each loaned to DM&L. See *Chelena v. Ga. Fed. Sav. &c. Assn.*, 256 Ga. 336, 337 (349 SE2d 180) (1986) (issues of non-material fact do not preclude summary judgment).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 13, 1997 —
RECONSIDERATION DENIED MARCH 28, 1997 —

*Hatcher, Stubbs, Land, Hollis & Rothschild, Joseph L. Waldrep, Champion & Champion, Forrest L. Champion, Jr.*, for appellants.
*Buchanan & Land, Clay D. Land, Benjamin A. Land*, for appellees.